## EDWARD L. WARD ET AL. *vs.* STATE, FOR THE USE OF CHARLES H. SCHLOSSER ET AL.

*Order Directing Payment of Sum Allowed in Auditor's Account is Final, and Not Open to Collateral Attack—Interest on Sum Audited—Under Prayer Referring to the Pleadings, the Sufficiency of the Declaration Considered—Declaration in Action on Bond of Receiver—Demand on Surety.*

An order of Court ratifying an Auditor's Account as to a certain claim and directing the receiver to pay it is a final adjudication binding on the receiver and his surety, unless reversed on appeal or revoked in that Court.

Consequently, in an action on the receiver's bond for failure to pay the sum so directed to be paid, the order is not open to collateral attack, and evidence is not admissible to show that the receiver did not have sufficient funds to pay the claim.

When an Auditor's Account directs a receiver to pay a certain sum, interest thereon may be recovered from the time of the demand upon him.

A prayer offered by a defendant which asserts that under the pleadings the plaintiff is not entitled to recover should be granted, when the declaration in the case fails to state a legal cause of action.

In an action against a receiver and his surety to recover a sum directed to be paid by an Auditor's Account, a declaration is insufficient which does not allege that the receiver had notice of the audit and of its final ratification.

It is not necessary to serve on a receiver an authenticated copy of an Auditor's Account ordering him to pay a claim when he knew that the account had been stated.

When the bond of a receiver, conditioned for the faithful discharge of his duty, does not provide that demand upon the surety for the payment of a sum due by the receiver shall be made before bringing suit, such demand is not a pre-requisite to an action on the bond.

*Decided December 9th, 1909.*

Appeal from the Circuit Court for Howard County (BRASHEARS and FORSYTHE, JJ.).

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*Edward M. Hammond,* for the appellants.

*Harry E. Karr,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The facts of this case are these: Edward L. Ward and George L. Mowen, two of the defendants, were appointed, on the 23rd of September, 1902, by the Circuit Court for Baltimore County, receivers of the Arthur B. Nitsch Brick Company, and were required to give bond in the penalty of fifteen thousand dollars for the faithful discharge of their duties as receivers. They executed and filed a bond in the penalty prescribed with the United States Fidelity and Guaranty Company as surety, which bond was duly approved, and the receivers entered upon their duties and took charge of the property of the company. The condition of the bond was that the said Ward and Mowen should well and faithfully perform the trust reposed in them by the order by which they were appointed, or which might be reposed in them by any future order or decree in the premises.

Charles H. Schlosser and Joseph T. Steinacker, trading as Schlosser and Steinacker, the equitable plaintiffs in this suit, had a valid mechanics lien claim for the sum of three hundred and ninety-two dollars and seventy-eight cents against

the property of the said company. The auditor of the Circuit Court for Baltimore County, where the trust was being administered, stated and filed two accounts between the trust estate and the receivers, designated as accounts "A" and "B." In both accounts the lien claim of Schlosser and Steinacker was allowed in full. Account "A" represents the auditor's view to the proper principles upon which the distribution should be made, and account "B" was stated at the suggestion of the receivers and in accordance with the theory upon which they thought it should be stated. In both accounts the receivers are charged with the precise amount of money, to wit, $41,318.31, received by them from the sale of the property of the Brick Company. Exceptions were filed to both of these accounts by certain creditors of the company; but no exceptions were filed to the allowance of the claim of Schlosser and Steinacker, and upon their petition the Court on the 13th of July, 1907, finally ratified and confirmed both accounts of the auditor so far as they allowed the mechanics lien claim of Schlosser and Steinacker, and ordered that the receivers apply the proceeds accordingly. The testimony is clear that both receivers had notice of the audit and the confirmation thereof, and that frequent demands were made upon them for payment prior to the suit, and that they had never paid the claim as they were required to do by the order of July 13th, 1907.

This suit was instituted in the Circuit Court for Baltimore County upon the bond of the receivers, and the case was removed to the Circuit Court for Howard County where it was tried and where the judgment appealed against was entered. The defendants demurred to the declaration, but the demurrer was subsequently withdrawn, and the case went to trial upon the issues joined upon the pleas of the defendant. During the progress of the trial the defendants reserved three exceptions to the rulings of the Court on questions of evidence, one to the action of the Court upon the prayers and upon the special exceptions filed by the defendants to the plaintiff's first prayer, and one to the instruction by the Court to the

jury as to the form of the verdict. In this last exception it
appears that the Court merely told the jury that they must
either find for the plaintiffs or the defendants, and if for the
plaintiffs they must name the amount. We do not see any
error in this instruction. Nothing is said about it in the
brief of the appellants nor was it mentioned in the argu-
ment, and it will not be further noticed.

The first, second and third exceptions present substantially
the same question, and may be considered together. The re-
ceivers offered to prove that they had not at the time of the
trial, and have not had sufficient funds to pay the claim of
the equitable plaintiffs; that the auditor's accounts "A" and
"B" had not been finally ratified as to the receipts of the
receivers, and that they would show that the money charged
against them in that account was not, in fact, received.

All these questions were concluded and determined by the
order of July 13th, 1907. That order cannot be attacked in
this collateral way. It fixed the liability of the receivers,
and imposed upon them the obligation of paying the plain-
tiff's claim. Its legal force and effect cannot be avoided in
this action by the line of inquiries suggested, and the Court
was right in excluding the proffered testimony. That order
was a decretal order, or an order in the nature of a final
decree, and must stand for what it purports to be upon its
face, until revised or revoked by some proper proceeding.
It has the effect of an *adjudication in rem*, and the distribu-
tion ordered to be made is *res adjudicata*. *Thurston* v. *Devec-
man*, 30 Md. 310; *Trayhern* v. *Coulbourn*, 66 Md. 278; *Rog-
ers, Brown & Co.* v. *Citizens National Bank*, 93 Md. 613;
*Marine Bank* v. *Heller*, 94 Md. 213.

In *Taylor* v. *State, use of Miller*, 73 Md. 221, it is said
that "if a decretal order, disposing of a trust estate in the
hands of a trustee, be not an adjudication *in rem*, as respects
him and his sureties, the latter, when not parties to the cause,
would not be precluded by it, but might in some other Court
dispute each item of the audit, and as often bring in question
collaterally the propriety of the decree passed by a Court

having exclusive jurisdiction over the trust property. This, as we have seen, cannot be permitted. When an audit disposing of trust money has been ratified, and the trustee has been ordered to pay out the funds as audited, the order as to him and his sureties has the force and effect of an adjudication *in rem*, and if he fails to make payment and his bond be put in suit, there are but two questions open for the jury, and these are: Has such an order been passed? Has the money been paid? The Court's order ratifying the audit is absolutely binding on the trustee and his sureties unless reversed on appeal to this Court, or revoked on proper proceedings in the Court by which it was passed."

At the conclusion of the whole case the plaintiffs offered one prayer, which was granted, and the defendants submitted three prayers, all of which were refused. They also filed special exceptions to the defendant's first prayer, and this was overruled by the Court. There is no error in the plaintiff's first prayer of which the defendants can complain. The prayer leaves the question of interest to the discretion of the jury; but under the established law of this State the plaintiffs in a case like this were entitled to recover the interest as a matter of right from the date of the demand upon the receivers for the payment of the sum specified in the order of July 13th, 1907. *Newson* v. *Douglass,* 7 H. & J. 328; *Havre de Grace* v. *Fahey,* 108 Md. 539.

The defendant's first and third prayers should have been granted. Both referred to the pleadings, and assert that under the pleadings there was no legally sufficient evidence to entitle the plaintiffs to recover. They raised the question as to the legal sufficiency of the declaration. In *Leopard* v. *The Chesapeake and Ohio Canal Company,* 1 Gill, 222, in discussing a prayer which did not refer to the pleadings, the Court considered the *Act of 1825, Chapter 117* (Article 5, sec. 9, Code 1904), and said: "The bill of exceptions, on which the present appeal is founded, presented for decision in the Court below no question upon the pleadings in the cause. Whether the declaration states facts sufficient, if proved, to

enable the appellant to maintain his action, or whether the
facts proved sustain the allegations in the declaration, are
questions which in the case before us, under the *Act of 1825,
Chapter 117,* we are not called on to decide. We are not
permitted to affirm or reverse the judgment of the County
Court upon any point which is not shown by the record to
have been there raised and decided. The matter brought up
for review in this Court is the granting by the Court below
of the appellee's prayer for an instruction to the jury, that
upon the evidence given in the cause, 'the plaintiff (the ap-
pellant) is not in the face of said deed entitled to recover for
any damage done his mills by reason of the construction of
a canal across said public road, and the destruction of said
public road.' The prayer as made to the Court, for the pur-
pose of obtaining its determination thereof, since the *Act of
1825,* concedes by implication the sufficiency of the pleadings
in the cause; and so far from inviting the Court to the exami-
nation thereof, or raising any question thereon for its deci-
sion, it in effect withdraws them from its consideration, and
invokes it to decide the isolated question whether such were
not the legal effect and operation of the deed referred to, that,
thereby the testimony given in the cause showed no cause of
action in the appellant. The question raised by the prayer
made to the Court below bears no resemblance to inquiries
which the Court are called on to make where an objection is
raised to the admissibility of evidence offered generally in a
trial before the jury. There the attention of the Court is nec-
essarily called to the pleadings in the cause; the admissibility
of the evidence being entirely dependent on them. The Court
cannot judge of its pertinence or materialty but by their in-
spection. Nor is it like the case of a demurrer, which is a
direct attack upon the pleadings themselves, wherein the Court
must of necessity inspect all the pleadings in the case as well
to enable it to ascertain the sufficiency of the particular plead-
ing demurred to, as in giving its judgment thereon to mount
up to the first material error in pleadings. Nor does it resem-
ble a motion in arrest of judgment, where the Court has no

means of judging of the validity of the verdict, but by refer-
ring to the pleadings and issues in the cause, upon which it
wholly depends, and without which it has no operation, and
is incapable of forming the basis of a final judgment in the
cause.

"The leading motive of the Legislature in passing the *Act
of 1825* was to remedy an evil which had been severely felt
and loudly complained of, that in this Court the judgment of
the County Court was reversed upon points never raised or
decided below, and which, had they been there raised, would
at once, by amendment or otherwise, have been obviated and
never been presented for consideration by the appellate Court.
Such is the nature of the objection now taken in this Court,
and such would have been its fate if raised in the County
Court. It is that the plaintiff below could not recover be-
cause his cause of action had been defectively stated in the
declaration, though fully established by proof. Whether
this defect exists or not, we have deemed it unnecessary to
inquire, because the defect, if true, is excluded from the con-
sideration of this Court by the express word and legislative
intent of the Act of 1825."

In *Baltimore City Passenger Railway Company* v. *Wil-
kinson,* 30 Md. 229, upon the authority of the case above
cited, it was distinctly held that under a prayer which re-
ferred to the pleadings the sufficiency of the declaration could
be inquired into. CHIEF JUDGE BARTOL, speaking for the
Court, said: "Since the decision of the case of *Leopard* v.
*The Chesapeake and Ohio Canal Company,* 1 Gill, 222, fol-
lowed by *Stockton* v. *Frey,* 4 Gill, 406, and by a number of
other cases, all recognizing the same rule, it must be consid-
ered as settled that where a prayer is asked or an instruction
granted to a jury upon the evidence of facts in the cause mere-
ly, without reference to the pleadings, the appellate Court is
precluded by the *Act of 1825, Chapter 117* (Code, Article 5,
section 12), from considering the state of the pleadings. But
it has always been competent for a party by a prayer prop-
erly framed to call the attention of the Court to the pleadings,

and to ask its judgment upon their sufficiency or legal effect; the rule being that every suitor must recover according to the *allegata* and *probata.* *Berry* v. *Hopper,* 4 G. & J. 467; *Bull* v. *Schuberth,* 2 Md. 57; *Burgess* v. *Lloyd,* 7 Md. 199; *Busby* v. *Conoway,* 8 Md. 55. In this case the declaration contains five counts; and the appellant, the defendant below, by several prayers directed to that end, called on the Court to pass judgment upon the legal sufficiency of each of the counts; *if any of them are insufficient, it was error to reject the defendant's prayers raising that question."*

The declaration in this case, which contains but one count, is insufficient. No suit on the bond could be maintained until after audit, confirmation, notice thereof to the receivers, and demand upon them for payment. *Oyster* v. *Annan,* 1 G. & J. 450; *Scott* v. *Ducker,* 2 Md. 284; *Dent* v. *Maddox,* 4 Md. 529; 1 *Poe, Pl. & Prac.,* sec. 570.

There is no averment in the declaration that the receivers had notice of the audit and of its final ratification. These indispensable facts were necessary to fix liability upon the receivers, and the failure to allege them makes the declaration, under the authorities cited, essentially bad.

The defendants' second prayer was properly refused. It asked that the verdict be directed for the defendants; first, because the order ratifying the account was not served upon the defendants; and secondly, because there was no evidence that they had knowledge thereof. They knew that the account had been stated and ratified, and it was not necessary to have served an authenticated copy of the order of ratification upon them. *Scott* v. *State,* 2 Md. 291; *Brent* v. *State of Maryland,* 18 Wallace, 430.

Demand upon the surety before bringing suit was not necessary. 32 *Cyc.* 106. There was no such stipulation in the bond, and the authorities upon this point (*Nelson* v. *Bostwick,* 5 Hill, 37; and *Husband* v. *Vincent,* 47 Ind. 211), cited by the appellants refer to cases where the obligation sued on made a previous demand upon the surety a part of the contract.

What we have said disposes of the special exceptions filed by the defendants to the granting of the plaintiff's first prayer. We find no error in the action of the Court in overruling these exceptions; but for the errors committed in refusing the defendants' first and third prayers the judgment must be reversed, and the case remanded for a new trial upon an amended declaration.

*Judgment reversed with costs and new trial awarded.*